# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01090-SCT

*IN THE MATTER OF THE ESTATE OF*
*PATRICIA MCDANIEL LANGSTON, DECEASED:*
*MANSFIELD LANGSTON*

*v.*

*ETHEL WILLIAMS*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/16/2008 |
| TRIAL JUDGE: | HON. JANACE H. GOREE |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LINDSEY C. MEADOR |
| ATTORNEYS FOR APPELLEE: | ALSEE MCDANIEL |
| | CARVER A. RANDLE |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 02/24/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    A wife created joint tenancies with her husband in a parcel of real estate and a certificate of deposit. After the wife's death, the chancery court found that, because a confidential relationship had existed between the decedent and her husband, the burden of proving the absence of undue influence fell on the husband. Then, finding that the husband had failed to carry that burden, the chancellor set aside the husband's survivorship rights in the parcel and certificate of deposit.

¶2. Generally, courts presume that a beneficiary under a will used undue influence over a testator with whom the beneficiary shared a confidential relationship, but we have recognized an exception to this rule for confidential relationships between husbands and wives. In this case of first impression, we hold that the exception for husbands and wives applies not only to bequests in a will, but also to *inter vivos* gifts. We therefore reverse and remand.

## BACKGROUND

¶3. The facts necessary to resolve this matter are simple. Patricia Langston granted her husband, Mansfield, joint tenancies (with right of survivorship) in the couple's marital home, and in a $200,000 certificate of deposit. Her will left nothing to Mansfield.

¶4. Following Patricia's death, her estate sought to set aside the joint tenancies. The chancellor – finding that a confidential relationship had existed between Mansfield and Patricia – presumed Mansfield had used undue influence, requiring Mansfield to prove by clear and convincing evidence that he did not unduly influence Patricia to make the gifts. Then, finding Mansfield did not meet this burden, the chancellor set aside both gifts.

¶5. The Court of Appeals correctly reversed the chancellor for presuming undue influence. But it reversed and rendered, depriving the estate of an opportunity to prove undue influence.

## ANALYSIS

¶6.    This Court "will not reverse a chancery court's findings, be they of ultimate fact or of evidentiary fact, where there is substantial evidence supporting those findings."[1]  But if "an erroneous legal standard was applied," we review de novo, and are free to reverse.[2]

¶7.    In *Madden v. Rhodes*, we defined confidential relationship as

> a relation between two people in which one person is in a position to exercise a dominant influence upon the other because of the latter's dependency upon the former, arising either from weakness of mind or body, or through trust[. T]he law does not hesitate to characterize such relationship as fiduciary in character.[3]

¶8.    The factors a court considers in determining whether a confidential relationship exists include:

- whether one person has to be taken care of by others;
- whether one person maintains a close relationship with another;
- whether one person is provided transportation and has their medical care provided for by another;
- whether one person maintains joint accounts with another;
- whether one is physically or mentally weak;
- whether one is of advanced age or poor health; and
- whether there exists a power of attorney between the one and another.[4]

¶9.    This Court has long identified a distinction in the standards of law applied to challenged *inter vivos*—as opposed to testamentary—gifts.  In *Madden*, we said that

> the rules of law are different regarding gifts testamentary and gifts inter vivos where a confidential relationship exists between the testator/grantor and the beneficiary/grantee.  The prior holdings of this Court indicate a presumption

---

[1] *Estate of Dunn v. Reilly*, 784 So. 2d 935, 939 (Miss. 2001) (quoting *Cooper v. Crabb*, 587 So. 2d 236, 239 (Miss. 1991)).

[2] *Madden v. Rhodes*, 626 So. 2d 608, 616 (Miss. 1993).

[3] *Id.* at 617 (quoting *Hendricks v. James*, 421 So. 2d 1031, 1041 (Miss. 1982)).

[4] *In re Estate of Dabney*, 740 So. 2d 915, 919 (Miss. 1999).

of undue influence only arises in the context of gifts by will when there has been some abuse of the confidential relationship, such as some involvement in the preparation or execution of the will. On the other hand, with a gift inter vivos, there is an automatic presumption of undue influence even without abuse of the confidential relationship. Such gifts are presumptively invalid.[5]

¶10. In *Genna v. Harrington*,[6] however, we held that the confidential relationship between husband and wife does not raise a presumption of undue influence. Specifically, we stated:

> It is undoubtedly true that a husband or a wife may exercise undue influence upon the other spouse, but the mere fact that there is a close relationship between the parties in a marriage does not mean that one's influence upon another is undue influence. The influence which a loyal wife, by her virtues, kindnesses and devotion, gains over her husband's affection and conduct, whereby a husband is caused to make a will in her favor, is no ground for refusing to admit the will to probate.
>
> A wife may be caused by her love and affection to make a will in favor of her husband in the same way.
>
> In order to set a will aside upon the grounds of undue influence on the part of a spouse, it must be shown that the devisee spouse used undue methods for the purpose of overcoming the free and unrestrained will of the testator so as to control his acts and to prevent him from being a free agent.[7]

¶11. So under *Genna*, a surviving spouse does not have to rebut a presumption of undue influence. Rather, it is the contestant's burden to show that the surviving spouse used undue influence. The Court of Appeals correctly extended *Genna*'s husband-wife exception to *inter vivos* gifts. And so, even though the chancellor found a confidential relationship, she erred by presuming undue influence, thereby shifting the burden to Mansfield to prove the absence of undue influence.

_____

[5] *Madden*, 626 So. 2d at 618.

[6] *Genna v. Harrington*, 254 So. 2d 525 (Miss. 1971).

[7] *Id.* at 528-29 (citing 57 Am. Jur. *Wills* § 359 (1948)).

¶12. The estate argues that the chancellor was correct because *Genna* involved a testamentary gift as apposed to an *inter vivos* grant, which—as discussed above—is treated differently.

¶13. This Court has not previously extended the rule in *Genna* to *inter vivos* gifts between a husband and wife. Today we do so. We hold that a confidential relationship between a surviving spouse and a deceased spouse does not create a presumption that the surviving spouse used undue influence with respect to *inter vivos* gifts and transfers. As is true with contested wills, the contestant bears the burden of proving the surviving spouse used undue influence.

¶14. The Court of Appeals' opinion in today's case is in conflict with its earlier decision in *Spencer v. Hudspeth*.[8] In that case, the Court of Appeals considered whether a confidential relationship between the decedent and her husband created an automatic presumption that an *inter vivos* gift was invalid, thereby shifting the burden to the widower, the grantee, to rebut. Rather than extending the law from *Genna*, it applied the law from *Madden*, requiring the husband to rebut an automatic presumption of undue influence.

¶15. In today's case, the Court of Appeals attempted to distinguish *Spencer* as follows:

> [I]n *Spencer v. Hudspeth*, this Court reversed the chancery court's denial of a motion to set aside a deed on the ground of undue influence. Ethel Hudspeth executed a deed to forty acres of land to her husband, Montie Hudspeth. We found a confidential relationship existed between Ethel and Montie because Ethel was physically and mentally weak. She had suffered a stroke, a heart attack, and a broken hip. She was bedridden, disoriented, and very weak. Ethel's signature on the deed was misspelled, and Ethel had been in a nursing

---

[8] *Spencer v. Hudspeth*, 950 So. 2d 238, 240 (Miss. Ct. App. 2007).

5

home for a year before the deed was signed. The motion to set aside the deed was filed by Ethel's niece after both Ethel and Montie were deceased.

The facts of *Spencer* are distinguishable from the facts in this case. Ethel's signature, which was made while she was physically and mentally weak and a resident of a nursing home, was highly suspect. In the instant case, there is no question that Patricia executed the deed and the certificate of deposit. Both Noble, the attorney who prepared the deed, and Paul Townsend, the banker who prepared the certificate of deposit, testified that Patricia was competent, knowledgeable, and did not exhibit any mental weakness.[9]

¶16. Actually, the reasons the Court of Appeals gave to distinguish *Spencer* are factors for determining the existence of a confidential relationship. The court's analysis did not address who had the burden of proving the existence or absence of undue influence. Both cases involved *inter vivos* gifts between spouses in confidential relationships. In *Spencer*, the husband had to prove that there was no undue influence. In today's case, the Court of Appeals held that the estate had to prove the husband's use of undue influence. Our decision today resolves this conflict.

¶17. After finding the chancellor had applied a wrong legal standard, the Court of Appeals reversed and rendered. As Judge Irving astutely pointed out in his dissent, however, "Mississippi appellate courts generally reverse and remand a chancellor's judgment when an incorrect legal standard has been applied."[10] Because the chancellor incorrectly shifted the burden to Mansfield, the estate was not required to—and thus had no reason to—move forward with its attempt to prove that Mansfield had used undue influence over Patricia. So

---

[9] *Langston v. Williams*, 2010 WL 1208468, *4 (Miss. Ct. App. March 30, 2010) (citations omitted).

[10] *Id.* at *7.

we affirm the decision of the Court of Appeals in part, but we reverse in part, remanding this case to allow Williams the opportunity to make such a showing.

## CONCLUSION

¶18.　We hold that the law we announced in ***Genna v. Harrington***[11] concerning testamentary gifts applies equally to *inter vivos* transfers.　A confidential relationship between spouses does not create a presumption that one spouse used undue influence over the other to obtain an *inter vivos* gift.　And one who claims the gift was the product of undue influence bears the burden of proof.　Because the chancellor found that such a presumption existed, the estate was neither required, nor given, the opportunity to prove undue influence. We affirm the Court of Appeals in part and reverse it in part.　We therefore reverse the trial court judgment and remand this case for a new trial.

¶19.　**REVERSED AND REMANDED**.

　　**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS CHANDLER AND PIERCE, JJ., CONCUR.**

---

[11] ***Genna***, 254 So. 2d 528-28. (Miss. 1971).