542 So.2d 903 (1989)
In the matter of the LAST WILL AND TESTAMENT OF R.V. DICKEY, Deceased.
Helen Dickey BLANKS
v.
Robert Van DICKEY, III.
No. 58432.
Supreme Court of Mississippi.
April 5, 1989.
Rehearing Denied May 10, 1989.
Guy N. Rogers, Scales & Scales, Jackson, for appellant.
John K. Keyes, Keyes & Rogers, Collins, Francis Vining, Monticello, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BLASS, JJ.
PRATHER, Justice, for the Court:
The issue presented by this appeal is the sufficiency of the evidence to establish mental incapacity in a will contest case. Robert Van Dickey, III, (Bob) brought this action in the Chancery Court of Lawrence County, Mississippi, against his sister, Helen Dickey Blanks, contesting the validity of the will of their father, R.V. Dickey. The jury found in favor of Robert Van Dickey, III, and against the will.
From this order Helen Dickey Blanks, the sole devisee under the will, appealed, assigning as error the following:
1. The court erred in failing to grant a peremptory instruction for the proponent on the issue of mental capacity.
2. The court erred in failing to grant the motion for a new trial in that the verdict of the jury was against the overwhelming weight of the evidence.
3. The verdict of the jury in finding against the will was not supported by, and *904 was contrary to, any credible evidence under the law applicable thereto.
4. The verdict of the jury was a sympathy verdict and was a result of misapplication of the law contained in the instructions of the court and the trial court further erred in granting instruction number C-4 on behalf of the contestant after timely objection by the proponent.

I.
R.V. Dickey executed his last will and testament on December 20, 1971, devising his entire estate to his daughter, Helen Dickey Blanks and appointing her executrix. The witnesses to the will were Joseph Dale, the attorney who prepared the will, and Mary Nell H. Patterson, the secretary of Mr. Dale. Mr. R.V. Dickey died January 19, 1981, leaving his two children as heirs-at-law, R.V. Dickey, III, and Helen Dickey Blanks.
On July 13, 1981, Helen Dickey Blanks, who resided in South Carolina, probated the will of her father, in common form and without notice to her brother. In a separate Chancery Court action filed June 16, 1983, this suit was brought by Bob Dickey against his sister Helen asserting the issue of devisavit vel non under Miss. Code Ann. § 91-7-23 (1972). As grounds for setting aside the will, the complaint asserted: (1) testamentary incapacity; (2) fiduciary and confidential relationship of his sister to their father; and (3) his father's excessive use of intoxicating liquors to the extent that it destroyed testamentary capacity.
On April 11, 1985, the chancellor appointed Special Master Judge R.I. Prichard, III, to hear the issue of devisavit vel non before a jury. At the hearing, the contestant presented evidence that the testator: drank; used profanity; cursed his son on many occasions; struck his son without apparent provocation; stated on numerous occasions before and after making his will that he planned to disinherit his son; once attempted to take his son to a house of prostitution; was strong-willed; and was a hard worker who worked from sun-up to sun-down six days a week in the management of a 504 acre farm. On the other hand, the proponent presented evidence from the subscribing witnesses that: they witnessed the will; the testator stated the will expressed his intention and desire; and the testator was not intoxicated at the time he made the will.
After hearing the evidence and the instructions of the court, and deliberating fifteen minutes, the jury rendered a verdict for the contestant. On October 9, 1985, the Special Master entered his order as a report and confirmed that the true and correct verdict of the jury was for the contestant and against the will. The chancellor entered an order on October 20, 1985, approving and accepting the report of the Special Master and judgment based on the jury's verdict, and overruling the proponent's motion for a judgment notwithstanding the jury's verdict.

II.

DID THE TRIAL COURT ERR BY FAILING TO GRANT A PEREMPTORY INSTRUCTION FOR HELEN DICKEY BLANKS ON THE ISSUE OF MENTAL CAPACITY?
This Court has stated the rule that controls this assignment of error on many occasions.
The rule for determining whether a peremptory instruction is appropriate requires that all evidence favorable to the party against whom the peremptory instruction is requested must be accepted as true, all evidence in favor of the party requesting the peremptory instruction in conflict with that of the other party must be disregarded, and, if the evidence and the reasonable inferences to be drawn from same will support a verdict for the party against whom it is requested, then the peremptory instruction should be refused.
Whitley v. City of Meridian, 530 So.2d 1341, 1347 (Miss. 1988); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652 (Miss. 1975).
In analyzing this applicable standard of review to the facts of this case, the issue becomes whether the proof was sufficient *905 to withstand a peremptory instruction. The contestant's proof consisted of two witnesses, one a neighbor that knew Mr. Dickey from 1950 until 1980 as adjoining landowners, and the other an employee of Mr. Dickey from 1953 to 1958. Both of the witnesses basically testified to the same observations  that Mr. Dickey made statements of hostility toward his son Bobby and cursed him. The father stated that he was going to disinherit his son before 1971 when the will was executed and that attitude did not change for years after the will's execution. Neither witness could identify a reason for this attitude, and expressed his or her belief that the son tried untiringly to please his father and obey him. One witness testified to Mr. Dickey's drinking alcoholic beverages "some" every day. Neither of the parties testified as the case was tried in 1985 under the existing statute Miss. Code Ann. § 13-1-7, commonly called the Dead Man's Statute, prohibiting a party from testifying to establish or defend his claim against an estate of a deceased person.[1]
When the contestant's proof ended, Helen Dickey moved for a directed verdict. The court's master did find that no proof of any fiduciary relationship between the testator and the proponent, nor of undue influence, had been proved and the master granted a directed verdict as to those allegations.
The proponent proceeded with rebuttal proof on the testamentary capacity issue. The attorney who prepared the will testified of the normal mental capacity of Mr. Dickey at the time and occasion of the execution of the will, and that the will expressed his intention on December 20, 1971. Another witness testified of Mr. Dickey's moderate use of alcohol and love for his son Bobby.
This Court is of the opinion that this testimony fails to show testamentary incapacity. No medical proof was offered as to mental incapacity; the strongest lay testimony that was offered showed a dislike, or hostility, or even hatred for his son that is alleged to have destroyed his testamentary capacity.
This Court has addressed the law relating to such an allegation.
As stated in Gholson v. Peters, 180 Miss. 256, 176 So. 605 (1937):
It is laid down in the authorities that an unfounded prejudice, or antipathy, or even hatred towards a near relative is not of itself enough to destroy testamentary capacity. A testator may entertain his animosities, cherish his prejudices, and nurse his wrath against those who would be the heirs at law of his estate, and may be guided by those feelings in the disposition of his property and still have testamentary capacity, unless the sentiments harbored by him amount to an insane delusion... .
Gholson 176 So. at 606-607.
Mental capacity to make a will, the general tests as to mental capacity, what constitutes an insane delusion, and its effect upon testamentary capacity are all questions of law upon which the court should instruct the jury before the case is finally submitted to them.
While the unnaturalness, unjustness, or unreasonableness of the provisions of the instrument offered for probate as a will may, as stated above, constitute evidence of testamentary incapacity, such circumstance should not be given undue importance in the instructions to the jury, since it is recognized that jurors are likely to seize upon any pretext to invalidate by their verdict a will which seemingly makes an unequal or inequitable disposition of the testator's property. As often stated, an instruction which singles out and calls to the attention of the jury the unnaturalness of the will, without any explanation of how the unnatural character of the will might be correlated with other facts, is erroneous since it is misleading.
79 Am.Jur.2d § 167 at 394-95 (emphasis added).
The jury here was not instructed that a person of sound mind may leave his *906 property to whomever he wishes and an unequal distribution would not affect the validity of the will. The proponent of the will was entitled to have the jury instructed that a person possessing testamentary capacity has the right to divide his property in such manner as to him may seem best, and that no next of kin or relative, however near, has any legal right which can be asserted against the legally executed will. See Tinnin v. First Bank of Mississippi, 502 So.2d 659, XXXXXXXXXXX (Miss. 1987). The proponent, however, failed to request such an instruction.
Proponents of a will have the burden of proving the will throughout.
They meet this burden by showing the will was duly executed and admitted to probate. When the will is admitted to probate, proponents put on prima facie evidence that the testator had testamentary capacity and further that no undue influence was placed upon him. The burden of going forward then shifts to contestant, who must overcome the presumption raised by proponents that testator had testamentary capacity...
Matter of Launius, 507 So.2d 27, 29-30 (Miss. 1987) (quoting Harris v. Sellers, 446 So.2d 1012, 1014 (Miss. 1984)).
The contestant failed, however, to prove that the testator lacked the testamentary capacity to make a will. As stated in Fortenberry v. Fortenberry, 188 Miss. 735, 196 So. 232 (1940):
Even a confirmed liar has a right to make his will. An immoral man, who merits no respect from his fellows, has that right under our laws.
Fortenberry, 196 So.2d at 237.
An examination of the record reveals that Robert Van Dickey, III failed to overcome the presumption that the testator had testamentary capacity. Matter of Launius, 507 So.2d 27, 29-30 (Miss. 1987). The peremptory instruction on the issue of mental capacity, therefore, should have been granted. Having reached this conclusion on the first assignment of error, the other issues become moot.

III.
This case must be reversed and rendered for the proponent on the issue devisavit vel non. The case is remanded to the trial court for proceedings not inconsistent with the opinion.
REVERSED AND RENDERED ON DEVISAVIT VEL NON ISSUE; REMANDED FOR FURTHER PROCEEDINGS.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] See Rule 601, Mississippi Rules of Evidence, effective January 1, 1986.