555 So.2d 64 (1989)
Earl Leon CLARDY, Joyce Clardy Boyd, and all other Interested Parties
v.
The NATIONAL BANK OF COMMERCE OF MISSISSIPPI, Executor of the Estate of Anita P. Clardy, Deceased.
No. 07-58923.
Supreme Court of Mississippi.
December 13, 1989.
*65 Gary R. Parvin, Starkville, for appellants.
John Paul Moore, Starkville, for appellee.
Before HAWKINS, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal arises from a will contest. The Chancery Court upheld the will of an elderly widow which in effect disinherited her two adopted children and the question is whether the Court saddled the wrong parties with the burden of persuasion en route. We hold the Court erred in this regard and reverse.

II.
Anita P. Clardy, at the time a seventy-nine year old widow residing in Starkville, Mississippi, departed this life on April 24, 1987. Her husband, Earl Clardy, had died nearly four years earlier. About three and a half months before her death  on January 8, 1987, to be exact, Anita had executed a new will in which she left her property to various friends and relatives. Of significance, she left only one dollar to each of her two adopted children, Earl and Joyce, "because of their vile attitude towards me since 1953 [the date of their adoption] and the vile names they have called me."
On April 29, 1987, the National Bank of Commerce of Mississippi (sometimes "proponent") filed in the Chancery Court of Oktibbeha County its Petition for Probate of Will and Issuance of Letters Testamentary in the Estate of Anita P. Clardy. By decree entered the same day, the clerk issued letters testamentary to the Bank as executor. Subsequently on May 7, 1987, the Bank as executor filed an amendment to its petition for probate to proceed in solemn form. Earl Leon Clardy of Houston, Texas, and Joyce Clardy Boyd of Leavenworth, Kansas, the adopted children of Anita Clardy, were named as interested parties.
On August 31, 1987, Earl and Joyce answered, denying that their mother had testamentary capacity at the time she executed the will.
On November 3, 1987, and December 7, 1987, the case was tried before the Chancery Court, sitting without jury. At trial proponent called a number of witnesses to establish Clardy's testamentary capacity and, as well, a witness who told of Earl's and Joyce's disregard for their mother.
As contestants, Earl and Joyce sought to show that in the years following their father's death Anita became irrational, experienced false delusional beliefs regarding them and their treatment of her, and lacked testamentary capacity when she made her new will  just over three months before her death.
The Chancery Court issued a Bench Opinion that was filed on December 21, 1987. In that opinion the Chancery Court discussed the burden of proof in the case sub judice. The Chancery Court stated:
The proponents and contestants are not before this Court as equals. The proponents enjoy the privilege of being in a preferenced [sic] position in that, under the law, this Court, as well as the contestants, are charged with the responsibility of complying with the wishes of the testatrix, and with that obligation goes the legal presumption that the testatrix was of sound, disposing mind and memory. The burden of proof rests with the contestants.

* * * * * *
The contestants, therefore, having the burden of proof, in the opinion of the Court, have failed to meet that burden, and their request for relief will be denied.
On December 17, 1987, the Chancery Court entered judgment in favor of the Bank as proponent of the will, upholding its validity. Earl and Joyce have perfected their appeal to this Court.

III.
On this appeal Earl and Joyce argue that the Chancery Court incorrectly saddled *66 them with a burden of persuasion which in law rested with the proponent.
Our law on this issue is settled to a certainty. To begin with, the positive statutory law of this state declares "On the issue of [devisavit vel non], the proponent of the will shall have the affirmative of the issue and be entitled to all the rights of one occupying such position." Miss. Code Ann. § 91-7-29 (1972). We have accepted this rule of practice and evidence and fleshed out its meaning.
Proponents of a will have the burden of proving the will throughout. They meet this burden by showing the will was duly executed and admitted to probate. When the will is admitted to probate, proponents put on prima facie evidence that the testator had testamentary capacity... . The burden of going forward then shifts to contestant, who must overcome the presumption raised by proponents that testator had testamentary capacity ...
In re Will of Dickey, 542 So.2d 903, 906 (Miss 1989); see also In re Estate of Edwards, 520 So.2d 1370, 1372-73 (Miss 1988); In re Will of Launius, 507 So.2d 27, 29-30 (Miss 1987); Harris v. Sellers, 446 So.2d 1012, 1014 (Miss 1984); Sheehan v. Kearney, 82 Miss. 688, 21 So. 41 (1896). See also Weems, Wills and Administration of Estates in Mississippi, 184-188 (1988).
Put in today's terminology,[1] the proponent of the will at all times bears the burden of persuading the trier of fact on all issues requisite to the validity of the will, e.g., due execution and testamentary capacity. At the outset the proponent bears the burden of producing evidence of due execution and testamentary capacity. This burden is conventionally met by offering the will itself, the affidavits of subscribing witnesses and the judgment admitting the will to probate. Genna v. Harrington, 254 So.2d 525, 527 (Miss. 1971). These offerings make out what is referred to as the proponent's prima facie case, meaning only that in such a state of the record the proponent is entitled to survive the contestant's motion for a directed verdict, in the event the case is heard before a jury, and that a jury verdict upholding the will may survive a motion for judgment notwithstanding the verdict. Bigleben v. Henry, 196 Miss. 586, 596, 17 So.2d 602, 604 (1944). In the event no further proof is offered in a non-jury trial, the proponent will have carried its burden of persuasion sufficient to survive a motion to dismiss, see Rule 41(b), Miss.R.Civ.P.; Ainsworth v. Callon Petroleum Co., 521 So.2d 1272 (Miss. 1988); Croenne v. Irby, 492 So.2d 1291 (Miss. 1986). Of course, if there is to be a contest of the will, the proponent does not have to rest after proving the common form probate but may and generally should offer other witnesses and evidence at that time and as a part of his case-in-chief.
Once the proponent has shouldered his burden of production such that he has made out a prima facie case, the burden of production shifts to the contestants. What is critical for present purposes is that the burden of persuading the trier of fact on the issues of due execution and testamentary capacity rests on proponent throughout and never shifts to the contestants. Matter of Estate of Edwards, 520 So.2d 1370, 1373 (Miss. 1988); Cheatham v. Burnside, 222 Miss. 872, 878, 77 So.2d 719, 720 (1955). That burden of persuasion is subject to the familiar preponderance of the evidence standard. See, e.g., Blalock v. Magee, 205 Miss. 209, 251, 38 So.2d 708, 714 (1949); Sheehan v. Kearney, 82 Miss. 688, 699-702, 21 So. 41, 45-46 (1896).
The consequence that must attend enforcing an erroneous burden of persuasion to an outcome determinative issue is apparent and is but a variant of our rule that, where the trial judge has applied an erroneous legal standard, we are not bound by the familiar substantial evidence/clearly erroneous test. See Detroit Marine Engineering v. McRee, 510 So.2d 462, 467 (Miss. 1987); Bell v. City of Bay St. Louis, 467 So.2d 657, 661 (Miss. 1985). We have in a variety of contexts reversed judgments predicated on an erroneous quantum of proof standard. See, e.g., McClendon v. *67 State, 539 So.2d 1375, 1377-78 (Miss. 1989); McGory v. Allstate Insurance Co., 527 So.2d 632, 635-38 (Miss. 1988); Ellzey v. Fyr-Pruf, Inc., 376 So.2d 1328, 1331-32 (Miss. 1979). By analogy, where a party in law without the burden of persuasion has in fact been saddled with it, we must reverse.
We do not ignore proponent's argument that, notwithstanding the language of the bench opinion, the course of proceedings below suggests that the Court did in fact understand the correct burden of persuasion. There is a point early on in the trial where counsel stated the principles articulated above, particularly regarding the burden of production shifting to contestants after proponent established its prima facie case, and the Court responded, "That's substantially correct." Where it is apparent from the record that the court understood the burdens and applied them faithfully, we will not reverse for a slip of the tongue or ambiguity of comment from the bench. See Stokes v. State, 548 So.2d 118, 121-22 (Miss. 1989). In the present case, however, we have an articulate statement from the Court that "the proponents and contestants are not before this Court as equals" and explaining that the reason therefor is that "the burden of proof rests with the contestants." The Court then reviewed the evidence and in conclusion stated:
The contestants, therefore, having the burden of proof, in the opinion of the Court, have failed to meet that burden, and their request for relief will be denied.
As explained above, unmistakably our law places the ultimate burden of persuasion, nee burden of proof, on the proponent. We find no reading of the Chancery Court's bench opinion which will avoid the reality that the Court placed this burden on contestants.
The judgment of the Chancery Court is reversed and this matter is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] See, e.g., McCormick, The Law of Evidence, 946-59 (3d ed. 1984).